**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JODY E. PERRINE, ) | |
| ) | CASE NO. 5:13-cv-1086 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN COLVIN, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jody E. Perrine ("Perrine") challenges the final decision of the Acting Commissioner of Social Security, Carolyn Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On August 31, 2010, Perrine filed an application for POD and DIB alleging a disability

onset date of August 8, 2008. (T. 19.) Her application was denied both initially and upon reconsideration. Perrine timely requested an administrative hearing. (Tr. 19.)

On March 2, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Perrine, represented by counsel, and an impartial vocational expert ("VE") testified. On April 6, 2012, the ALJ found Perrine was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 28.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-three (43) at the time of her administrative hearing, Perrine is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). Perrine has a high school education and past relevant work as a "habilitation assistant and fitness instructor." (Tr. 27.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Perrine was insured on her alleged disability onset date, August 8, 2008, and remained insured through September 30, 2011. (Tr. 21.) Therefore, in order to be entitled to POD and DIB, Perrine must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Perrine established medically determinable, severe impairments, due to status post partial left wrist fusion; status post carpal tunnel surgical repair on the left wrist; status post metacarpophalangeal joint fusion of the left thumb; left ulnar ligament tear/instability, status post ulnar nerve ligament repair and revision; mild carpal tunnel syndrome of the right wrist; status post right knee arthroscopic meniscus repair; fibromyalgia; chronic tendinitis; obesity; and dysthymic disorder. (Tr. 21.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Perrine was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 23.) The ALJ then used the

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Perrine was not disabled. (Tr. 28-29.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*RFC Assessment*

Perrine contends that the RFC determination is not supported by substantial evidence, because it does not accurately recount her functional limitations and resulted from the ALJ improperly weighing the medical evidence of record. (ECF No. 23 at 9-19.) The Commissioner

argues that the ALJ properly weighed the medical evidence of record when arriving at the RFC determination. (ECF No. 25 at 11-15.)

A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. § 404.154(a); SSR 96-8p. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. 20 C.F.R. § 404.1546(c). The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942 at * 6 (6th Cir. Jan. 15, 2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 2004 WL 2567650 (6th Cir. Nov. 10, 2004); *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514058 (6th Cir. Aug. 18, 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 2009 WL 2514058 at * 7. Nonetheless, an RFC finding that is not supported by substantial evidence is grounds for remand. *See, e.g., Dragon v. Comm'r of Soc. Sec.*, 470 Fed. App'x. 454, 465 (6th Cir. 2012) (finding that the ALJ's RFC was not supported by substantial evidence where it

ignored certain statements by a consultative psychological examiner); *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 192 (6th ir. 2009) (finding that remand was necessary where the ALJ failed to incorporate a claimant's demonstrated mental impairments into the RFC); *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 786 (6th Cir. 2009) (remanding after concluding that the ALJ's RFC determination was not supported by substantial evidence.)

With respect to limitations in Perrine's left hand, the medical sources of record found as follows:

- On March 9, 2012, independent medical examiner Arvin Gallanosa, M.D., examined Perrine and noted decreased sensation in the left upper limb; left wrist was fixed at 10 degrees extension and significant swelling and scarring was noted; left wrist strength could not be tested due to fusion; sensation was decreased throughout the left thumb; and grip strength was "giveaway." (Tr. 891-92.) Dr. Gallanosa concluded that "Perrine does have total loss of use of the left arm." (Tr. 893.) He opined that fusion of the left thumb and wrist has made movement in those joints virtually impossible. She has no real grip strength in her left upper limb. *Id*. She cannot grasp, lift, handle, feel, push, pull or reach with the left upper limb. *Id*. He stated that Perrine's left upper limb was, for all practical intents and purposes, useless. *Id*.

- On January 11, 2012, treating physician John Dietrich, M.D., who performed Perrine's surgeries, indicated that Perrine has a fused left wrist and a fused left thumb. While "she has some residual utility in the left arm," based on Ohio's workers' compensation statutes, Perrine had a total and permanent loss of the use of her left arm. (Tr. 840.)

- On September 12, 2011, independent medical examiner Ralph J. Kovach, M.D., examined Perrine and noted her left wrist and thumb fusion surgeries. (Tr. 811.) He found that Perrine had reached maximum medical improvement. *Id*. He opined that Perrine was limited to carrying ten pounds with the left upper extremity; that there was no motion and simple grasping was limited; and, that she could not perform any fine finger activity or repetitive movement with the left upper extremity. (Tr. 812.)

- On June 21, 2011, Michael R. Magoline, M.D., an orthopedic surgeon, examined Perrine and noted "no range of motion" at the metacarpophalangeal (MP) left thumb joint and the distal interphalangeal (DIP) left thumb joint. (Tr. 799.) She had extremely limited pinch strength in the left thumb, no range of motion of the

7

>>left wrist, limited range of motion in all of her fingers with some hypersensitivity in her fingertips. *Id*. Based on these observations, Dr. Magoline opined that Perrine has essentially lost the use of her left thumb. *Id*.

- On March 5, 2011, Leanne M. Bertani, M.D., a non-examining State Agency medical consultant, opined that Perrine had the following manipulative limitations: limited handling (gross manipulation) in both hands; limited fingering (fine manipulation) in both hands; and, unlimited ability to reach and feel. (Tr. 126.) Specifically, Perrine was limited to frequent fine and gross manipulation with both of the upper extremities. *Id*.

- On October 25, 2010, W. Jerry McCloud, M.D., a non-examining State Agency medical consultant, opined that Perrine's ability to push/pull was limited in the upper extremities, and she should never operate hand controls due to swelling in both wrists. (Tr. 115.) Perrine also had the following manipulative limitations: limited handling (gross manipulation) in both hands; limited fingering (fine manipulation) in both hands; and, unlimited ability to reach and feel. (Tr. 116.) Specifically, Perrine was limited to frequent fine and gross manipulation of the right upper extremity but only occasional fine and gross manipulation of the left upper extremity. *Id*.

As explained by the Sixth Circuit Court of Appeals, the regulations require an ALJ to evaluate the medical opinions of record as follows:

> Pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927, an ALJ is to "evaluate every medical opinion" submitted in light of a variety of listed factors, which include the nature of the treatment relationship, the supporting medical basis for the opinion, and overall consistency with the larger record. The regulation also sets out a presumptive sliding scale of deference to be given to various types of opinions. An opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opining physician. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation marks omitted). A nontreating source, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. *Id*. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference. *Id*.
>
> In determining the weight to be assigned to a source opinion, the ALJ should determine whether a source is a treating source or a nontreating consultative source. This determination requires the ALJ to consider factors "including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as

8

>   a whole, and whether the physician was practicing in her specialty." *Ealy*, 594
>   F.3d at 514.

*Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x. 433, 438-439 (6th Cir. 2012).

With respect to the functional limitations in Perrine's hands, specifically her left hand, the ALJ found the following limitations. Perrine could frequently handle and finger.[2] (Tr. 23.) Pursuant to Social Security Ruling ("SSR") 83-10 (1983), "'[f]requent' means occurring from one-third to two-thirds of the time." Thus, the ALJ necessarily found that Perrine could "handle and finger" for up to six hours in an eight-hour workday, except for the additional prohibition against repetitive use of hand controls that require the use of Perrine's left thumb. (Tr. 23.) No limitations were included regarding Perrine's ability to pinch or grasp. The ALJ's decision discussed each of the above cited medical opinions, ascribing them some weight or little weight. (Tr. 26-27.)

Every single medical source of record, save for non-examining State Agency physician Dr. Bertani, found greater functional limitations in Perrine's left hand than determined by the ALJ. Given the RFC finding, the ALJ effectively rejected examining physician Dr. Gallanosa's opinion that Perrine had no real grip strength, and could not grasp, lift, handle, feel, push, pull or reach with the left upper limb.[3] (Tr. 26.) Despite ostensibly ascribing "some weight" to the

---

[2] Handling corresponds to "gross manipulation" while fingering corresponds to "fine manipulation."

[3] The ALJ did not actually discuss these functional limitations found by Dr. Gallanosa, but simply gave little weight to his opinion because it was "based upon worker's compensation criteria and not on the claimant's actual ability to use her hands and arms ..." (Tr. 26.) While Dr. Gallanosa did opine that Perrine had "total loss of use of the left arm," his opinion also contained specific functional limitations that the ALJ failed to consider and rejected without discussion.

opinion of examining physician Dr. Kovach, the ALJ implicitly rejected his finding that Perrine could not perform any fine finger activity or repetitive movement with the left upper extremity. (Tr. 26.) The ALJ also rejected the opinion of treating physician and surgeon, Dr. Dietrich, that Perrine had a total and permanent loss of the use of her left arm, because it was "based upon worker's compensation criteria." (Tr. 26.) Unlike Dr. Gallanosa, Dr. Dietrich's opinion did not contain specific functional limitations concerning Perrine's abilities with respect to her left hand (Tr. 840), though his general opinion that Perrine's ability to use her left hand was seriously compromised is largely consistent with the medical sources of record. The opinion of examining orthopedic surgeon Dr. Magoline was also ascribed little weight, and the finding that Perrine had extremely limited pinch strength in the left thumb and essentially lost the use of her left thumb was also implicitly rejected. (Tr. 26.)

The ALJ's rejection of these opinions was also based on alleged inconsistencies with "objective findings," though the ALJ points only to a November 30, 2011 physical examination. (Tr. 26.) According to the record, James Lejka, M.D., who performed the examination, specifically noted that Perrine was "referred for evaluation and electrodiagnostic testing of the ***right upper limb***." (Tr. 821) (emphasis added). Dr. Lejka found mild carpal tunnel syndrome in the right hand, but none in the left. (Tr. 822-23.) This finding is insignificant, given that Perrine's limitations in her left hand were never alleged to stem from carpal tunnel syndrome. Moreover, while Dr. Lejka notes pain free motion in the fused upper left limb, he does not offer any opinion as to Perrine's ability to perform gross or fine manipulation with her left hand. *Id*. As such, it is unclear which portions of Dr. Lejka's examination purportedly undermine the functional limitations found by other physicians.

With respect to the non-examining physicians, the RFC is also not supported by the opinion of Dr. McCloud, who believed Perrine could only perform occasional, rather than frequent, gross and fine manipulation with the left hand. (Tr. 116.) The RFC is also inconsistent with Dr. McCloud's opinion that Perrine should not use either hand in the operation of controls. *Id*. Nevertheless, the ALJ purported to assign "some weight" to Dr. Cloud's opinions. (Tr. 27.) The only opinion that arguably supports the RFC is that of Dr. Bertani, another non-examining physician. (Tr. 126.) However, the ALJ's favoring the opinion of one non-examining physician over the opinions of one treating physician, three examining physicians, and one non-examining physician runs afoul of the regulations.

This Court recognizes that ascribing more weight to a non-examining physician over an examining or treating physician is not *per se* error. *See, e.g., Norris*, 461 Fed. App'x. at 439 ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record.") (citations omitted); *see also Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x. 636, 642 (6th Cir. 2013) (observing that in appropriate circumstances, opinions from State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources) (citing SSR 96-6p). One such instance is where the "State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id*. (citations omitted). As explained by the *Brooks* court, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially

11

when that evidence reflects ongoing treatment, we generally require some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." 531 Fed. App'x. at 642 (internal quotation marks omitted) (*quoting Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). In the case at bar, non-examining source Dr. Bertani, did not have the benefit of any of the examining or treating source opinions, as her opinion predates all of them. Perhaps even more significantly, Dr. Bertani's March 25, 2011 opinion appears to have been offered prior to the most recent surgery performed on Perrine's left hand. Though the parties fail to cite to the record as to when this surgery occurred, therapy notes from June 22, 2011 indicate that Perrine had left hand surgery earlier in the month. (Tr. 831-32.) Dr. Dietrich's notes indicate that on May 10, 2011, Perrine's cast was removed from her left thumb and that the thumb fusion was solid. (Tr. 826.) In light of the fact that non-examining physician Dr. Bertani did not have access to records documenting significant ongoing surgical treatment or to the opinions of treating and examining physicians, her opinion does not constitute substantial evidence.

Furthermore, an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96–8p (1996). While the ALJ generally opined that Perrine's activities of daily living did not support the level of limitation found by the medical sources, that determination is also unsupported by substantial evidence. The ALJ observed that Perrine can independently attend to her personal care, load the dishwasher, drive short distances, and use a computer mouse for up to thirty minutes. (Tr. 26.)

12

These activities, however, do not undermine the described functional limitations in Perrine's left-hand, as these can largely be performed one-handed. Notably, as even observed by the ALJ, Perrine has some difficulty dressing, an activity generally requiring two hands. (Tr. 26.) In addition, none of these activities, either singularly or combined, demonstrate an ability to perform gross or fine manipulation for up to six hours in an eight hour workday. As such, Perrine's self-reported activity level does not constitute substantial evidence supporting the RFC determination, nor does it constitute a reasonable explanation for essentially rejecting the opinion of nearly every physician of record. *See, e.g., Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant]."); *accord Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263 at *29 (N.D. Ohio, June 17, 2011); *Schlote v. Astrue*, 2012 WL 1965765 (N.D. Ohio, May 31, 2012).

Given the lack of substantial evidence supporting the RFC, a remand is necessary. This Court cannot determine whether there are a significant number of jobs for someone with greater functional limitations in the left upper extremity than described in the RFC. As such, the lack of substantial evidence supporting the RFC cannot be deemed harmless.[4] Perrine's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial

---

[4] The VE at the hearing was never asked whether there were any jobs for an individual who could only perform occasional handling and fingering with the left hand, nor was he asked whether jobs existed for an individual who essentially had no use of the left hand.

13

economy.[5]

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: February 27, 2014

---

[5] Upon remand, the ALJ should consider clarifying whether Perrine's vision had any impact on her work-related abilities.